NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ADP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> KRISTI MORK, <br><br> Defendant. | Civil Action No.: 17-4613 (CCC-MF) <br><br> **OPINION** |

**CECCHI, District Judge.**

I. **INTRODUCTION**

This matter comes before the Court on the motion of ADP, LLC ("Plaintiff") for a Temporary Restraining Order and Preliminary Injunction as to Kristi Mork ("Defendant"), as well as Plaintiff's request for attorney's fees. (ECF No. 2-1 ("Mot.")). The Court has considered the submissions made in support of and in opposition to the instant motion. (ECF Nos. 17 ("Opp'n"), 18 ("Reply")). The Court held oral argument on this matter on April 18, 2018. ("Tr."). The parties also submitted supplemental briefs in this matter, per the Court's request at oral argument. (ECF Nos. 31, 33, 36, 41). For the reasons set forth below, Plaintiff's motion is **GRANTED in part** and **DENIED in part**.

II. **BACKGROUND**

Plaintiff, a Delaware limited liability company with its principal place of business located in Roseland, New Jersey, has "[f]or over fifty years . . . provided business outsourcing and software services to clients, including human resources, payroll, tax, and benefits administration services. ADP offers its services internationally and across the United States, including in New Jersey." (ECF No. 1 ("Compl.") ¶¶ 2, 6). Plaintiff maintains that Defendant "held various positions with ADP for approximately nine (9) years," and ultimately rose to the level of a "District Sales Manager position in ADP's Global Enterprise

1

Solutions/National Accounts Division." (*Id.* ¶ 9). Plaintiff further maintains that in each of Defendant's roles, Defendant:

> was responsible for cultivating, developing, and maintaining business with clients and prospective clients, and marketing and selling ADP's payroll and tax processing services, which include human capital management tools, health and retirement benefit management, time-tracking systems, and support, in and around the greater Chicago, Illinois market, as well as parts of Wisconsin.

(*Id.*).

As part and parcel of her employment by Plaintiff, Defendant was required to enter into a Sales Representative Agreement ("SRA"), which Defendant duly executed on June 21, 2007. (*Id.* ¶ 11). The SRA includes a number of restrictive covenants, including non-solicitation and non-disclosure provisions, which committed Defendant "never to solicit ADP's clients and prospective clients or disclose ADP's confidential, proprietary, and trade secret information . . . and also to return all ADP materials upon separating from ADP." (*Id.*). More specifically, the SRA bars Defendant from soliciting any client to which she "was assigned, managed, and/or had knowledge of, contact or involvement with during the two-year period prior to the Termination date." (ECF No. 1-1 at 1). The SRA also provides that Defendant "would not use any information outside the scope of her employment with ADP concerning the identity or activity of any current clients, former clients, prospective clients and/or marketing partners of ADP." (Compl. ¶ 12). Plaintiff avers that these restrictions were cumulatively designed "to protect ADP's confidential business information and client goodwill, among other protectable business interests." (*Id.* ¶ 11).

Moreover, Plaintiff maintains that Defendant voluntarily participated in Plaintiff's stock award program, which awards restricted stock "to certain high performing employees (the "Plan")." (*Id.* ¶ 15). "As part of the electronic acceptance process to receive the award of restricted stock, an employee must accept the terms of [certain] restrictive covenants." (*Id.*). The employee, in other words, must acknowledge that she has reviewed the pertinent agreements and consents to the Restrictive Covenant

Agreements ("RCAs") therein. (*Id.*). Plaintiff maintains that Defendant accepted awards under the Plan in 2009, 2010, 2011, 2012, and 2015; in each instance "obligat[ing] herself to non-competition, non-solicitation, non-disclosure, and non-use restrictive covenants." (*Id.* ¶ 16). Most recently, Plaintiff states that Defendant accepted a stock award on September 30, 2015, which is even more stringent than the previous agreements. (*See id.* ¶ 17). In sum, the key difference between the SRA and the RCAs is that the RCA's non-solicitation provision is far more expansive, as it essentially bars Defendant from soliciting *any* existing or prospective ADP client, regardless of her knowledge or interaction with such existing or potential client during her employment. (*See* ECF No. 1-2 at 5).

Plaintiff avers that Defendant resigned from her employment effective January 2, 2017, ostensibly "to stay at home and spend more time with her family." (Compl. ¶ 27). However, Plaintiff maintains that, only months later, Plaintiff discovered that Defendant had taken "a position with The Ultimate Software Group, Inc. ("Ultimate")—a direct competitor of ADP—in which she is responsible for a sales territory in the Chicago, Illinois area, which at least in part overlaps her former territory at ADP that covered the greater Chicago, Illinois area." (*Id.* ¶ 28). Plaintiff further avers that Defendant "sponsored a March 29, 2017 event on behalf of Ultimate in Oak Brook, Illinois, which was part of her former territory at ADP." (*Id.* ¶ 29). Plaintiff accordingly contends that Defendant's employment with Ultimate amounts to "unfair competition, breach of the duty of loyalty," and violation of the non-compete, non-disclosure, and non-use provisions in the SRA and RCAs. (*See id.* ¶¶ 33-37).

### III. <u>LEGAL STANDARD</u>

"[A]n injunction is 'an extraordinary remedy, which should be granted only in limited circumstances.'"[1] *Novartis Consumer Health, Inc. v. Johnson & Johnson–Merck Consumer Pharms. Co.*,

---

[1] "The standard for granting a temporary restraining order is the same as the standard for granting a preliminary injunction." *Kongtcheu v. Secaucus Healthcare Ctr., LLC*, No. 13-1856, 2014 WL 2436048, at *2 (D.N.J. May 30, 2014) (citing *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)).

3

290 F.3d 578, 586 (3d Cir. 2002) (citations omitted); *ADP, LLC v. Rafferty*, No. 18-1922, 2018 WL 1617705, at *3 (D.N.J. Apr. 3, 2018) ("Preliminary injunctions are extraordinary remedies that are not routinely granted."). "The decision whether to enter a preliminary [i]njunction is committed to the sound discretion of the trial court." *Duraco Prods., Inc. v. Joy Plastic Enters.*, 40 F.3d 1431, 1438 (3d Cir. 1994). In considering whether to grant a preliminary injunction, courts review the following factors: "(1) the likelihood that the moving party will succeed on the merits; (2) the extent to which the moving party will suffer irreparable harm without injunctive relief; (3) the extent to which the nonmoving party will suffer irreparable harm if the Injunction is issued; and (4) the public interest." *Shire U.S., Inc. v. Barr Labs., Inc.*, 329 F.3d 348, 352 (3d Cir. 2003).

## IV. DISCUSSION

### A. Plaintiff Demonstrates a Likelihood of Success on the Merits as to the SRA, but Not as to the RCAs

Defendant does not dispute that she is in breach of the relevant agreements; rather, Defendant contends that the RCAs represent unenforceable restraints of trade and that, in any case, the RCAs are unenforceable as overbroad. Defendant therefore maintains that Plaintiff has not met its burden as to showing a likelihood of success on the merits as to the RCAs. Defendant does not, however, contest that she is bound by the terms of the SRA, and indeed has expressed a willingness to continue to abide by its terms for a reasonable period of time. (*See* Tr. 10:23-11:1 ("We would agree today to enter into a consent order to enforce the terms of the Sales Representative Agreement for a reasonable period of time going forward.")). The primary dispute between the parties is whether Defendant can be broadly enjoined from soliciting *any* existing ADP client, under the terms of the RCA, or merely from soliciting existing ADP clients whom she gained knowledge of during her employment with Plaintiff, per the SRA.[2]

---

[2] The parties do not dispute that Defendant should only be enjoined from soliciting *prospective* clients whom she gained knowledge of during her employment, even though the blanket terms of the RCA would prevent Defendant from soliciting all prospective ADP clients. *See* (Tr. at 36:6-9) ("That is, your Honor,

4

Under New Jersey law, a restrictive covenant is deemed reasonable "where it simply protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public." *Solari Indus., Inc. v. Malady*, 264 A.2d 53, 56 (N.J. 1970). The New Jersey Supreme Court has also "recognize[d] as legitimate the employer's interest in protecting trade secrets, confidential information, and customer relations." *Ingersoll-Rand Co. v. Ciavatta*, 542 A.2d 879, 888 (N.J. 1988). Indeed, the New Jersey Supreme Court has expressly held that:

> employers may have legitimate interests in protecting information that is not a trade secret or proprietary information, but highly specialized, current information not generally known in the industry, created and stimulated by the research environment furnished by the employer, to which the employee has been "exposed" and "enriched" solely due to his employment.

*Id.* at 894. "Courts will not [however] enforce a restrictive agreement merely to aid the employer in extinguishing competition." *Id.* at 892. In sum, while "the exact parameters of th[e] protectable interest" have been left undefined, the essential inquiry looks to the balance between "the employer's need for protection and the hardship on the employee that may result." *Id.* at 894.

The Court finds that, at this stage of the litigation, Plaintiff has not shown a substantial likelihood of success on the merits as to the RCAs, though Plaintiff has shown a substantial likelihood of success as to its claims under the SRA. The Court is persuaded by the recent decision in *ADP, LLC v. Rafferty*, No. 18-1922, 2018 WL 1617705 (D.N.J. Apr. 3, 2018), where the court addressed virtually identical arguments concerning the same RCAs and SRA at issue here. More specifically, the parties in *Rafferty* "dispute[d] whether there [was] a legitimate interest for the RCAs, because they protect against the same harm already covered by the SRA and NDA, *i.e.*, divulging trade secrets, doing damage to Plaintiff's good will, or soliciting Plaintiff's clients." *Id.* at *3.

---

why we have conceded, and I thought we did it in these papers but I want to make it clear, we are fine with a blue-penciling of that restriction to only be to prospects that she dealt with while she was at ADP.")).

5

The court in *Rafferty* first looked to *Laidlaw, Inc. v. Student Transportation of America, Inc.*, 20 F. Supp. 2d 727 (D.N.J. 1998), which "considered the validity of similar stock-option non-competes and applied New Jersey law to find that the agreements did not have a legitimate purpose." *Rafferty*, 2018 WL 1617705, at *3. The court reasoned that, "[s]imilarly in this case, Plaintiff does not require its employees to enter into the RCAs and does not even offer the RCAs to all of its employees, which is further evidence that the purpose behind the RCAs is not to protect Plaintiff's legitimate interests but rather to decrease competition." *Id.* The Court then observed that, even though the RCAs were "limited to the geographic territory where Defendant worked for Plaintiff and are only in effect for one year," they nonetheless "may . . . impose an undue hardship on Defendant . . . because the RCAs apply broadly to *all* of Plaintiff's current or prospective clients regardless of whether Defendant had contact with those clients." *Id.* at *4. Finally, the court noted that it was "not convinced of the success, or lack thereof, of [Defendant's] argument that the RCAs are unreasonable restraints on trade under collateral estoppel."[3] *Id.* The court therefore held that even "[t]hough the RCAs may be found to be enforceable at trial, Plaintiff has not set forth sufficient evidence to carry its burden at this juncture." *Id.* (citing *Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994)).

Here, the Court adopts *Rafferty*'s analysis and concludes that, due to the RCA's problematic nature and questions concerning their ultimate legitimacy as undue restraints on trade, Plaintiff has not shown a substantial likelihood of success on the merits as to its claims under the RCAs. The Court, however, does

---

[3] As the Court noted at oral argument, there are currently "16 different matters involving the same 5 covenants at issue" at various stages of litigation in this District and in New Jersey state court. (Tr. 4:4-5). While some courts have enforced the RCAs, *see, e.g., ADP, LLC v. Lynch*, No. 16-01053, 2016 WL 4707989, at *1 (D.N.J. Sept. 8, 2016), others have declined to do so. *See e.g., ADP, LLC v. Kusins*, Dkt. ESX-C-264-15 (N.J. Super. Ct. Ch. Div.) (June 27, 2017). The Third Circuit has addressed only one of these cases, affirming a partial grant of a preliminary injunction as to RCAs barring defendant from soliciting any of plaintiff's existing clients, but noting that a permanent injunction perhaps "should be narrower," and "might permit [defendants] to solicit some of ADP's current customers," similar to the injunctive relief the Court issues here. *ADP, LLC v. Lynch*, 678 F. App'x 77, 80 (3d Cir. 2017).

6

find that Plaintiff has shown a substantial likelihood of success on the merits as to its claims under the SRA. The court in *Rafferty* reached the same conclusion, reasoning that: (1) the SRA was "intended to protect Plaintiff's confidential and proprietary information and client relationships, which qualify as legitimate employer interests[;]" (2) the SRA "was narrowly tailored to clients that Defendant dealt with or was exposed to[;]" and (3) "Defendant acknowledged at the hearing that the SRA . . . [was] enforceable against her." *Id.* The Court likewise agrees with this analysis and finds that, because the SRA is both narrowly tailored and focused on the protection of legitimate employer interests, Plaintiff is substantially likely to succeed on its claims under the SRA. Indeed, as noted above, Defendant appears to concede that she is willing to abide by the terms of the SRA, in that she would agree to refrain from soliciting existing and prospective ADP clients whom she gained knowledge of during her employment with Plaintiff. (*See* Tr. 10:23-11:1 ("We would agree today to enter into a consent order to enforce the terms of the Sales Representative Agreement for a reasonable period of time going forward.")). The Court will therefore address the remaining three elements necessary for the issuance of a preliminary injunction as to Plaintiff's claims under the SRA alone.

### B. Plaintiff Demonstrates Imminent Irreparable Harm

"A plaintiff has the burden of proving a 'clear showing of immediate irreparable injury.'" *Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 205 (3d Cir. 1990) (quoting *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 225 (3d Cir. 1987)). In other words, a plaintiff "must establish more than a [mere] *risk* of irreparable injury." *ADP, LLC v. Jacobs*, No. 15-3710, 2015 WL 4670805, at *6 (D.N.J. Aug. 5, 2015). The harm alleged must be such that "cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). "Generally, the loss of good will, the disclosure of confidential and proprietary information, and the interference with customer relationships may be the basis for a finding of irreparable harm." *Laidlaw*, 20 F. Supp. 2d at 766; *see also Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir.

1998) ("Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill.").

While Defendant attempts to distinguish Ultimate's suite of products and services from those sold by ADP, even Defendant admits that "Ultimate is a competitor of ADP." (Opp'n at 10). The Court notes that Plaintiff has also alleged, and Defendant has conceded, that Defendant has potentially solicited current ADP clients in her geographical territory in at least one instance. (Compl. ¶ 29; Tr. 11:4-5 ("[Y]es, she sent out a flier for a meet-and-greet[.]")). Indeed, Defendant has refused to "deny that she has had contact with several ADP clients that she never heard of or dealt with when she was at ADP." (Tr. 19:1-3). While the monetary damage resulting from the loss of existing or potential clients may be insufficient to represent irreparable harm, *see Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1208-09 (D.N.J. 1992), the Court finds that "Defendant's solicitation of Plaintiff's clients would harm Plaintiff's good will, as clients would 'likely view any defection of employees to a competitor in a negative light.'" *Rafferty*, 2018 WL 1617705, at *5 (citing *Jacobs*, 2015 WL 4670805, at *7). The Court must accordingly enjoin Defendant from soliciting Plaintiff's clients whom she had knowledge of during her employment at ADP.

Plaintiff also maintains that Defendant possesses and is utilizing its "confidential and propriety information in connection with relationships ADP has spent years cultivating and maintaining." (Mot. at 17). Plaintiff further contends that Defendant is using Plaintiff's "trade secrets and confidential information to divert business away from ADP." (*Id.*). The Court agrees that, because Defendant is employed by Plaintiff's competitor, there is an imminent risk that Plaintiff's confidential and propriety information will be divulged, "which would be prevented by enjoining Defendant from violating the SRA" and its non-disclosure provisions. *Rafferty*, 2018 WL 1617705, at *5. The Court must therefore enjoin Defendant from any such use or disclosure of Plaintiff's confidential or proprietary information in

accordance with the SRA, as well as order that Defendant return to Plaintiff any physical confidential or propriety information that may still be in her possession.

### C. The Balance of Interests Supports Granting Injunctive Relief

"To meet the third factor, the granting of injunctive relief for the movant must not result in even greater harm to the non-movant." *Id.* Here, the Court

> [b]y enjoining Defendant from soliciting Plaintiff's clients that Defendant was involved with or exposed to, as well as enjoining her from disclosing confidential or proprietary information, the Court will accomplish the objective of the SRA . . . which is to prevent harm to Plaintiff's business caused by the loss of clients, information, and good will.

*Id.* The Court will not, however, enjoin Defendant from working at Ultimate, as this "would clearly result in significant harm to her and would be unnecessary in light of the fact that the harm to Plaintiff envisioned in the SRA . . . can be avoided by less restrictive means, *i.e.*, this preliminary injunction." *Id.* The Court finds that this represents the proper balance between the parties' respective interests. *See Jacobs*, 2015 WL 4670805, at *8 ("On balance, this Court finds appropriate that while Jacobs shall be enjoined from many activities, he will not be enjoined from working for [the competitor firm].").

### D. The Public Interest Supports Granting Injunctive Relief

"While the public has an interest in free competition, its interest is also furthered by protection of private contractual rights and particular confidential information." *Id.* Moreover, "[j]udicial enforcement of non-competition provisions of employment contracts serves the public interest by promoting stability and certainty in business and employment relationships." *Wright Med. Tech., Inc. v. Somers*, 37 F. Supp. 2d 673, 684 (D.N.J. 1999). The Court finds that entering relief in this instance in enforcing the SRA strikes the proper balance between these competing public interests.

### E. Attorney's Fees Are Not Warranted at This Stage of the Proceedings

"[I]nterim awards of attorney's fees are inappropriate where the only relief obtained is a preliminary injunction which may be subsequently overturned on the merits." *Tarabour v. Twp. of Livingston*, No. 10–3213, 2011 WL 855312, at *4 (D.N.J. Mar. 9, 2011) (citing *People Against Police*

*Violence v. City of Pittsburgh*, 520 F.3d 226, 234 (3d Cir.2008)); *see also* 6 Fed. Proc., L. Ed. § 11:203 ("Generally, the plaintiff is not the prevailing party for the purposes of a fee award where the plaintiff is granted a preliminary injunction which is to continue until there is a final disposition of the case on the merits."). This reflects the fact that "[a]t the preliminary injunction stage, the court is called upon to assess the *probability* of the plaintiff's ultimate success on the merits." *Sole v. Wyner*, 551 U.S. 74, 84 (2007) (emphasis added). Here, while the Court concludes that Plaintiff has demonstrated a likelihood of success on the merits as to its claims under the SRA, the Court has not definitively "resolve[d] any merit-based issue." *John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit*, 318 F.3d 545, 559 (3d Cir. 2003). The Court therefore denies Plaintiff's request for attorney's fees at this stage of the litigation.

## V. CONCLUSION

For the reasons stated above, the Court will enjoin Defendant from soliciting any of Plaintiff's existing or prospective clients whom she had knowledge of during her employment with Plaintiff, per the terms of the SRA. Defendant is further enjoined from utilizing or disclosing any of Plaintiff's confidential or proprietary information, and must immediately return any of Plaintiff's physical confidential or proprietary information in her possession. An appropriate Order accompanies this Opinion.

Date: June 22, 2018

_____
**CLAIRE C. CECCHI, U.S.D.J.**